UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NAVIGATORS SPECIALTY INSURANCE COMPANY,<br><br>    Plaintiff,<br><br>    v.<br><br>KAPIOLANI RESIDENTIAL, LLC, *et al.*,<br><br>    Defendants. | Case No. 17-cv-06575-SI<br><br>**ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND TRANSFERRING ACTION TO THE DISTRICT OF HAWAII**<br><br>Re: Dkt. Nos. 12, 18, & 26 |

All defendants have filed motions to dismiss for lack of personal jurisdiction or transfer for improper venue, and the motions are scheduled for a hearing on March 23, 2018. Pursuant to Civil Local Rule 7-1(b), the Court finds these matters appropriate for resolution without oral argument and hereby VACATES the hearing. For the reasons set forth below, the Court GRANTS defendants' motions to dismiss for lack of personal jurisdiction and TRANSFERS this case to the District of Hawaii.

## BACKGROUND

Plaintiff Navigators Specialty Insurance Company ("Navigators") filed this declaratory relief action against defendants, seeking a declaration that there is no coverage for claims relating to water damage under a commercial liability insurance policy that Navigators issued regarding a mixed use project in Honolulu, Hawaii, called the ONE Ala Moana project. Compl. ¶¶ 1-7 (Dkt. No. 1). Defendants Kapiolani Residential, LLC and HHMK Development, LLC ("Kapiolani" or "Developers") are the developers of the ONE Ala Moana project, defendant Albert C. Kobayashi,

Inc. ("Kobayashi") is the general contractor who built the project, and defendant Dorvin D. Leis Co., Inc. ("DDL") is a subcontractor who worked on the project. *Id*. ¶¶ 1-7. All defendants have moved to dismiss this case for lack of personal jurisdiction, or alternatively to transfer this case to the District of Hawaii.[1]

## I. The Parties

Navigators is a New York corporation engaged in the insurance business. Heiden Decl. ¶ 3 (Dkt. No. 31). Navigators' principal place of business is New York, New York. *Id*. It maintains an underwriting office in San Francisco, California, and claims offices in San Francisco, Los Angeles, and Irvine, California. *Id*. Navigators does not maintain an office in Hawaii. *Id*. Navigators issued an insurance policy to defendants for the ONE Ala Moana project for the policy period April 10, 2013 to October 10, 2015. Compl. ¶¶ 2, 5. ONE Ala Moana includes residential condominiums with common areas managed by the Association of ONE Ala Moana. *Id.* ¶ 5. The insurance policy provided commercial general liability coverage for the construction project. Koppel Decl. Ex. A (insurance policy) (Dkt. No. 29-1).

The Developers are Delaware corporations engaged in real estate development. Inouye Decl. ¶ 3 (Dkt. No. 12-1). According to the declaration of Kathryn Inouye, the Development Officer of both Kapiolani and HHMK, "[a]lthough the development entities were formed under the laws of Delaware, and have directors and officers that reside in Texas, the Development Entities only have operations in Hawaii. The Development Entities have no offices, operations, employees, or other physical presence in California. Their business consists exclusively of the development of a condominium project known as ONE Ala Moana, located at 1555 Kapiolani

---

[1] In support of the motions to dismiss for lack of personal jurisdiction, defendants have filed the following: (1) Kapiolani Residential, LLC and HHMK Development have filed the declaration of Kathryn Inouye, the Development Officer for both entities (Dkt. No. 12-1); (2) Albert C. Kobayashi Inc. has filed the declaration of Clyde Sugawa, its Chief Financial Officer and Treasurer (Dkt. No. 26-1); and (3) Dorvin D. Leis, Co. has filed the declarations of its President, Stephen Leis, and its counsel, Michele-Lynn Luke (Dkt. Nos. 18-1 & 32-1). In support of its opposition, plaintiff Navigators has filed the declarations of Joshua Koppel, the underwriter responsible for issuing the insurance policy to defendants; Sandra Klingbeil Heiden, a Senior Complex Claims Specialist for Navigators; and Helen Chen, Navigators' counsel (Dkt. Nos. 29-31). Unless otherwise noted, the facts are undisputed.

2

Blvd., Honolulu, HI 96814." *Id.*

Defendant Albert C. Kobayashi, Inc. ("Kobayashi") is a Hawaii corporation with its principal place of business in Honolulu, Hawaii. Sugawa Decl. ¶ 5 (Dkt. No. 26-1). Clyde Sugawa, the Chief Financial Officer of Kobayashi, states that Kobayashi "conducts its business operations as a general contractor for various types of construction, exclusively in the State of Hawaii." *Id.* Kobayashi does not have employees or offices in California, and does not conduct any business in California. *Id.* ¶ 6.

Defendant Dorvin D. Leis Co., Inc. ("DDL") is a Hawaii corporation engaged in mechanical construction. Leis Decl. ¶ 4. (Dkt. No. 18-1). Kobayashi retained DDL as a subcontractor to construct the heating ventilation and air conditioning portions of the ONE Ala Moana project. *Id.* ¶ 6; Sugawa Decl. ¶ 8. DDL's principal place of business is Kahului, Hawaii. Leis Decl. ¶ 4. DDL does not have employees or offices in California, and does not conduct any business in California. *Id.* ¶ 5.

## II. The Insurance Policy

Ms. Inouye, the Developers' Development Officer, states in her declaration that in or around 2013, during the pre-construction phase of the project, she contacted an insurance broker named Monarch Insurance Services, Inc. ("Monarch"), to secure a "project specific" or "wrap" policy for the project. Inouye Decl. ¶ 4. Monarch is located in Honolulu, Hawaii. *Id.* Ms. Inouye states that at Monarch's request, she completed a general insurance application that Monarch then provided to a wholesale insurance broker named CRC/Crump Insurance Services ("Crump"). *Id.* Crump is located in San Francisco, California. Koppel Decl. ¶ 4. Crump then forwarded the Developers' insurance application to Navigators in San Francisco, California, and Navigators agreed to write the policy. *Id.* ¶ 7; Inouye Decl. ¶¶ 4-5.

Navigators asserts that Kobayashi was a "co-applicant" for the policy, and therefore that Kobayashi was involved in the process by which the Developers selected Navigators. Opp'n at 2 (Dkt. No. 28). As support, Navigators cites the policy, which lists Kobayashi as a named insured, and an email from Crump to Navigators regarding procuring the policy, which also identifies

3

Kobayashi as a named insured. *See* Koppel Decl. Ex. A at 5 (policy), Ex. B (email). Kobayashi disputes that it was involved in the selection of Navigators. Clyde Sugawa of Kobayashi states in his declaration,

> 9. Kobayashi's contract with Developer required Kobayashi to enroll in a liability insurance policy specific to the Project. Specifically, the Developer for the Project purchased the Owner Controlled Insurance Policy ("OCIP") for the Project.
>
> 10. From Hawaii, Kobayashi enrolled in the OCIP for the Project.
>
> . . .
>
> 12. Kobayashi did not participate in any efforts made to obtain the OCIP for the Project. Kobayashi did not participate or take any active role in the process of applying for, negotiating or obtaining the OCIP issued by Navigators for the Project. Though Kobayashi was aware the Developer intended to use Monarch Insurance Services, a Hawaii company, to obtain insurance, Kobayashi had no contemporaneous detailed knowledge of the efforts by the Project's Developer, or the Developer's agents or brokers, including but not limited to the actual retention of Monarch Insurance Services . . . or Crump Insurance Services "(Crump") to obtain the OCIP for the Project. Kobayashi had no substantive involvement with either the evaluation process or acquisition of the OCIP for the Project. Kobayashi was not aware of the fact that Navigators agreed to issue the OCIP until after the OCIP had been issued to the developer. I am informed and believe the Developer knew Kobayashi would construct the Project prior to the Developer obtaining the OCIP policy and the Developer provided Kobayashi's name to Navigators as an enrollee under the OCIP.

Sugawa Decl. ¶¶ 9-10, 12.

According to Navigators' Underwriter Joshua Koppel, the underwriting of the policy was performed from Navigators' San Francisco office, and "[t]he negotiations of the policy were conducted through" the San Francisco office. Koppel Decl. ¶¶ 10-11. Navigators does not provide any information regarding the extent of these negotiations or who was involved. However, Navigators does not dispute defendants' declarations stating that they did not have any contact with Navigators during the underwriting process and did not negotiate with Navigators. Ms. Inouye states, "With regard to the Navigators Policy, I dealt exclusively with Monarch. I never had any direct contact with Navigators during the underwriting process, did not negotiate with Navigators, and did not know where Navigators' underwriters were located." Inouye Decl. ¶ 6; *see also* Sugawa Decl. ¶ 12; Leis Decl. ¶ 13.

After the Developers paid $959,237 in policy premium and $44,892.29 in Hawaii State Surplus Lines Tax, Navigators issued the policy in 2013 and caused the policy to be delivered to

the Developers' offices in Hawaii. Inouye Decl. ¶ 5.[2] DDL entered into a subcontract agreement with Kobayashi in August 2013, and DDL was required to enroll in the policy as a condition of the subcontract. Leis Decl. ¶¶ 6, 9. It is undisputed that DDL was not involved in procuring the policy. *Id*. ¶ 13.

The policy states that the insureds are the Developers and Kobayashi, and specifies that the place of performance is the location of the ONE Ala Moana Project. Inouye Decl. Ex. A at 4-5 (insureds) & 7 ("Schedule of Locations" listing 1555 Kapiolani Blvd., Honolulu, HI 96814-4551) (Dkt. No. 12-2). The policy identifies Navigators are being located at "1 Penn Plaza, New York, New York," and states that claims were to be reported to Navigators' San Francisco Claims office by electronic mail, or alternatively by regular mail to the San Francisco office, fax or by a report to a call center. *Id.* at cover, 13. The policy states that service of process was to be made on Navigators at their San Francisco office. *Id*. at 8.

### III. The Underlying Dispute

In July 2015, after completion of the ONE Ala Moana project, defendants notified Navigators that a condominium unit owner had complained about wet carpet. Compl. ¶ 6(a). Defendants notified Navigators that they investigated and determined that the wet carpet was caused by a water leak in an air conditioning condensate line, that the leak had caused damage to nine condominium units, and that defendants had repaired all but one unit. *Id*. Defendants made a claim for reimbursement under the OCIP for the cost of the repairs. *Id.*

The complaint alleges that in September 2015, defendants made claims for damage, apparently unrelated to the leak reported in July 2015, to two additional condominium units. *Id.* ¶ 6(b). By this time, DDL had determined that there were moisture issues throughout the condominiums at ONE Ala Moana. *Id.* In October 2015, defendants made claims for alleged damage to an additional 26 condominium units. *Id*. ¶ 6(c).

---

[2] Ms. Inouye states that the Developers paid Navigators an additional $541,381 in premium for additional coverage on the project. *Id*.

5

By February 2016, there had been at least 35 instances of leaks from air conditioning condensate lines at ONE Ala Moana. *Id*. ¶ 6(d). Navigators alleges that in the course of their investigation, defendants determined that the water leaks began as early as March 18, 2015. *Id.*

Although not alleged in the complaint, defendants have submitted evidence showing that Navigators retained a Hawaii-based engineer and a Hawaii-based attorney to investigate the water leaks, and a remediation plan was developed. Inouye Decl. ¶ 8. In April 2016, several representatives of Navigators met in Hawaii with representatives of the Developers to negotiate an agreement for allocating the cost of the repair work. *Id.* ¶ 10.

In May 2016, Navigators agreed, subject to a reservation of rights, to advance $100,000 to defendants to acquire parts that required advance notice to order and purchase, and to advance and/or reimburse defendants for attorneys' fees they incurred in negotiating a resolution of claims with the condominium association. *Id*.; *see also* Compl. ¶ 6(f).

According to the Inouye declaration (and not alleged in the complaint), after the April 2016 meeting, the Developers continued to work toward implementation of the repairs. Inouye Decl. ¶ 11. Ms. Inouye states, "[w]orking from a draft settlement agreement initially provided by Navigators, Developers also sought to obtain a release from the Association of Unit Owners ('AOUO') related to the water damage claims." *Id*. The agreement provided that AOUO approved of the repair plan and agreed to permit access to the units for repair work. *Id.* According to Ms. Inouye, "Navigators remained involved throughout, reviewing various draft versions of the agreement, providing its perspective on particular provisions, and insisting that its comments be incorporated therein. After the Developers obtained a version of the agreement that incorporated all of Navigators' comments, and circulated it to Navigators for final review in November 2016, they proceeded to finalize the settlement with the AOUO in early-2017." *Id.* ¶ 12.

In February 2017, the Developers, Navigators, and other parties participated in a mediation in Hawaii to reach an agreement on funding the repair work. *Id.* The mediation was not

successful, and Navigators filed this action in November 2017.[3]

Navigators' complaint seeks a declaration that there is no coverage under the policy for the defendants' claims, and also seeks reimbursement for the funds Navigators advanced to defendants as well as the costs of suit herein incurred by Navigators. Navigators alleges that there is no coverage for several reasons. First, Navigators alleges that it is not "legally obligated to pay" under the policy because no lawsuits were filed against defendants, and no court has ordered defendants to pay damages. Compl. ¶¶ 13 & 20. Second, Navigators claims that repairs and settlements with the condominium association that were conducted before Navigators gave consent are not covered. *Id*. ¶ 17. Third, Navigators alleges that the water damage is not "property damage" under the policy because the damage was caused by poor construction or the use of substandard or incorrect materials. *Id.* ¶¶ 23, 25, & 35. Fourth, Navigators alleges that defendants did not begin repairs to the condominium units in a timely and preventative fashion, and instead they waited until air conditioning units actually failed and caused damage before repairing the units. *Id*. ¶¶ 32, 35. Fifth, Navigators alleges that the air conditioning units failed because algae in the drain pipes prevented the condensate from draining, and fungi and bacteria are excluded from coverage under the policy. *Id*. ¶ 38. Finally, Navigators claims that the defendants are seeking indemnity from one another, and the policy bars coverage for indemnity claims. *Id*. ¶ 41.

**LEGAL STANDARD**

Personal jurisdiction over a non-resident defendant may exist if the defendant has either a continuous and systematic presence in the state (general jurisdiction), or minimum contacts with the forum state such that the exercise of jurisdiction "does not offend traditional notions of fair play and substantial justice" (specific jurisdiction). *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal citations omitted). Where there is no federal statute applicable to determine personal jurisdiction, a district court should apply the law of the state where the court sits.

---

[3] In this litigation, the parties have agreed to participate in ADR in Honolulu, Hawaii, in or around July 2018. Dkt. No. 37 at 1-2.

*Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004) (internal citations omitted). California's long-arm statute only requires that the exercise of personal jurisdiction comply with federal due process requirements. *Id*. at 800-01.

In order for a court to exercise specific personal jurisdiction in accordance with due process, a nonresident defendant "must have 'minimum contacts' with the forum state such that the assertion of jurisdiction 'does not offend traditional notions of fair play and substantial justice.'" *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1155 (9th Cir. 2006) (quoting *Int'l Shoe Co.*, 326 U.S. at 315). The Ninth Circuit employs a three-part test to determine whether the defendant has minimum contacts with a forum state. *Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414, 416 (9th Cir. 1997) (internal citations omitted). First, the plaintiff must establish that the defendant either purposefully availed itself of the privilege of conducting activities in the forum state or purposefully directed its activities toward the forum state. *Schwarzenegger*, 374 F.3d at 802. Second, the claim must "arise[] out of or result[] from the defendant's forum-related activities," and third, the exercise of personal jurisdiction over the defendant must be reasonable. *Pebble Beach Co.*, 453 F.3d at 1155. The plaintiff bears the burden of proving the first two conditions. *Boschetto v. Hansing*, 539 F.3d 1011, 1016 (9th Cir. 2008) (internal citations omitted). If the plaintiff carries this burden, "the defendant must come forward with a 'compelling case' that the exercise of jurisdiction would not be reasonable." *Id*. (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476-78 (1985)).

If a district court acts on the defendant's motion to dismiss without holding an evidentiary hearing, the plaintiff "need only demonstrate facts that if true would support jurisdiction over the defendant." *Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1129 (9th Cir. 2003) (internal citations omitted). Unless directly contravened, the plaintiff's version of the facts is taken as true, and conflicts between the facts contained in the parties' affidavits must be resolved in the plaintiff's favor for purposes of deciding whether a *prima facie* case for personal jurisdiction exists. *Id*.

**DISCUSSION**

**I. Specific Jurisdiction: Purposeful Availment**

Under the Ninth Circuit's test for specific jurisdiction,[4] Navigators must first establish that defendants either purposefully availed themselves of the privilege of conducting activities in California or purposefully directed their activities toward California. *Schwarzenegger*, 374 F.3d at 802. "For part one of this three-part test, we have typically analyzed cases that sound primarily in contract . . . under a 'purposeful availment' standard." *Boschetto*, 539 F.3d at 10116.

Defendants argue that they have not purposefully availed themselves of the privilege of conducting business in California because they are not California corporations, they have no California offices or employees, they do not conduct any business in California, and all of the facts giving rise to this dispute occurred in Hawaii in connection with the ONE Ala Moana project. Defendants argue that Navigators is attempting to manufacture personal jurisdiction based upon Navigators' own connection to California, which is contrary to the Supreme Court's instruction that "[t]he inquiry whether a forum State may assert specific jurisdiction over a nonresident defendant focuses on the relationship among the defendant, the forum, and the litigation." *Walden v. Fiore*, 134 S. Ct. 1115, 1121 (2014) (internal quotation marks omitted). Defendants also cite cases holding that "[t]he formation of a contract with a nonresident defendant is not, standing alone, sufficient to create jurisdiction." *Boschetto*, 539 F.3d at 1017 (California resident's purchase on eBay internet website of a car from Wisconsin defendants was not sufficient to create specific jurisdiction over defendants in California); *see also Futuresat Industries, Inc. v. Superior Court*, 3 Cal. App. 4th 155, 160 (1992) ("[A] mere one-time purchaser of goods from a seller in the forum state cannot be constitutionally subject to the exercise of personal jurisdiction by the courts of the forum state.").

The complaint alleges,

> Defendants availed themselves of the benefits and protections of California law by, among other things, retaining Crump Insurance Services, an insurance agent located [in San Francisco] to apply for and negotiate the terms of the . . . policy.

---

[4] Navigators does not contend that there is a basis for general jurisdiction over defendants, and thus the Court analyzes only whether Navigators has established specific jurisdiction.

> Navigators issued the . . . policy from its underwriting office in San Francisco . . . and . . . handled claims concerning the One Ala Moana project from its claims office in Irvine, California.

Compl. ¶ 6. Navigators argues that "the Developer Defendants and Defendant Kobayashi, either through their agent [Crump] in obtaining the policy or acting alone after the claims arose, deliberately engaged in substantial contacts with California." Opp'n at 4. Navigators also argues that DDL "came to California" to do business with Navigators by voluntarily enrolling in the policy and by submitting claims to Navigators' Irvine, California office. *Id*. at 4-5; *see also* Heiden Decl. ¶ 6 (stating that DDL, through its counsel and insurance agent, sent invoices to Navigators at its Irvine office) (Dkt. No. 31).

Navigators also contends that "[b]ut for defendants' purposeful contacts with California to purchase insurance and request payments for the claim and claims-related defense bills and invoices, the causes of action of this complaint would not have arisen." Opp'n at 7. Navigators asserts that "while the underlying construction defect claims arose in Hawaii, that matter is over; this declaratory relief action is about the construction, interpretation and application of a contract entered and performed in California." *Id.* Navigators argues that the policy was negotiated, underwritten, and issued from California, and the claims were processed in California.

The Court concludes that Navigators has not met its burden at step one of the test for specific jurisdiction. Here, defendants' only connection to California is based on the Developers' purchase of a single insurance policy from Navigators' San Francisco office, defendants' enrollment in that policy, and the submission of claims under that policy to Navigators' San Francisco office. This is insufficient to demonstrate a "substantial connection to California." *Boschetto*, 539 F.3d at 1017. "[T]he formation of a contract with a nonresident defendant is not, standing alone, sufficient to create jurisdiction." *Id.* (citing *Burger King Corp.*, 471 U.S. at 478); *Burger King Corp.*, 471 U.S. at 478 ("If the question is whether an individual's contract with an out-of-state party *alone* can automatically establish sufficient minimum contacts in the other party's home forum, we believe the answer clearly is that it cannot.") (emphasis in original); *see also Borg-Warner Acceptance Corp. v. Lovett & Tharpe, Inc.*, 786 F.2d 1055, 1059-62 (11th Cir. 1986) (discussing cases that stand for the proposition that "a mere one-time purchaser of goods

from a seller in the forum state cannot be constitutionally subject to the exercise of personal jurisdiction by the courts of the forum state"). The policy, which covers nonresident insureds and provides commercial liability insurance for a construction project in Honolulu, did not create any ongoing obligations on the part of defendants in California.

To the extent that Navigators attempts to rely on Crump's actions as a wholesale insurance broker in procuring the policy to show defendants have minimum contacts with California, Navigators has not shown that it is appropriate to do so. As a factual matter, Navigators has not submitted any evidence regarding the nature of the relationship between Crump and any of the defendants, nor has Navigators shown exactly what Crump did aside from sending Navigators an email regarding procuring the policy.[5] In addition, even if Crump was acting on behalf of the Developers and Kobayashi (a fact that at least Kobayashi disputes), Navigators has not cited any authority for the proposition that specific jurisdiction over defendants may be established based on Crump's actions as a wholesale broker. *Cf. Walden*, 134 S. Ct. at 1123 (2014) ("Due process requires that a defendant be haled into court in a forum State based on his own affiliation with the State, not based on the 'random, fortuitous, or attenuated' contacts he makes by interacting with other persons affiliated with the State."); *see also Roth v. Garcia Marquez*, 942 F.2d 617, 621-22 (9th Cir. 1991) (analyzing contacts of nonresident defendant author and his nonresident literary agent separately for purposes of personal jurisdiction). Further, to the extent Navigators argues that defendants' submission of claims to Navigators' California claims offices is sufficient to create specific jurisdiction, the Ninth Circuit has "concluded that ordinarily use of the mails, telephone, or other international communications simply do not qualify as purposeful activity invoking the benefits and protection of the forum state." *Roth*, 942 F.2d at 622 (internal quotation marks and citations omitted).

Although unpublished, the Court finds instructive *Applied Underwriters, Inc. v. Combined*

---

[5] Navigators asserts that the Developers and Kobayashi "retained Crump to apply for and negotiate the terms of the Navigators policy." Opp'n at 2. As support, Navigators cites an email from Crump to Navigators regarding procuring the policy. *See* Koppel Decl. Ex. B (Dkt. No. 29-1). That email does not establish that the Developers and Kobayashi retained Crump.

11

1 *Mgmt., Inc.*, 371 Fed. App'x 834 (9th Cir. Mar. 24, 2010) (unpublished). In that case, a California insurer sued its insured, a Maine corporation, to recover unpaid premiums on a workers' compensation policy covering the defendant's employees in Maine. The nonresident defendant did not regularly conduct business outside of Maine. The Ninth Circuit held there was no specific jurisdiction over the nonresident defendant, even though the insured "initially reached out" to California through its broker and negotiated the insurance contract by telephone and mail with the insurer's employees in California. *Id.* at 835. The Ninth Circuit also rejected the insurer's argument that the contract "envisioned continuing and wide-reaching contacts with California," finding that "there is no evidence in the record that the contract contemplated performance in California." *Id.* Here, similar to the nonresident defendant in *Applied Underwriters*, defendants do not conduct business in California and only conduct business in Hawaii, and their only connection to California is the purchase of an insurance policy providing commercial liability coverage for a construction project in Hawaii.

Navigators argues that "this declaratory relief action is about the construction, interpretation and application of a contract entered and performed in California." Opp'n at 7. However, Navigators does not cite any authority for the proposition that a commercial liability policy for a project in Hawaii is "performed in California" simply because the insurer is located in California. *Cf. Frontier Oil Corp. v. RLI Ins. Co.*, 153 Cal. App. 4th 1436, 1461 (2007) (holding, under California law that the intended place of performance of a liability insurance policy is the place of the insured risk).[6] In any event, although Navigators attempts to argue that this case is purely a matter of contract interpretation and does not involve the construction defect claims, resolving Navigators' claims—such as its allegation that there is no coverage because the water leaks were due to poor work and inferior materials—will necessarily require litigation regarding the underlying construction claims. Finally, to the extent Navigators contends that there is specific jurisdiction because the policy was underwritten and issued from California and the claims were processed in California, those arguments fail because they focus on Navigators'

---

[6] The parties dispute whether California law or Hawaii law applies to this case. The Court finds it unnecessary to resolve that issue in order to decide the personal jurisdiction question.

12

contacts with California and not those of defendants *See Walden*, 134 S. Ct. at 1122 ("We have consistently rejected attempts to satisfy the defendant-focused 'minimum contacts' inquiry by demonstrating contacts between the plaintiff (or third parties) and the forum state.").

The cases cited by Navigators are distinguishable. In *Roth*, 942 F.2d at 622, although the Ninth Circuit found that it was "a very close call," the court found that the nonresident defendants purposefully availed themselves of conducting business in California because "the contract concerned a film, most of the work for which would have been performed in California . . . all of the editing, production work, and advertising would have occurred in California . . . [and] [t]he checks that Roth would have sent Garcia Marquez . . . would have depended upon activities in California and the United States." In *Corporate Investment Business Brokers v. Melcher*, 824 F.2d 786, 789 (9th Cir. 1987), *California Closet Co. v. Ebben*, No. C 08-0625-SI, 2008 WL 1766767, at *4 (N.D. Cal. Apr. 15, 2008), and *Modius, Inc. v. PsiNaptic, Inc.*, No. C 06-02074 SI, 2006 WL 1156390, at *3 (N.D. Cal. May 2, 2006), the nonresident defendants purposefully availed themselves of the forum states by entering into long-term franchise or licensing contracts with the plaintiffs, and in some cases traveling to the forum states. Here, the Hawaii-based defendants never traveled to California, conduct no business in California, and have no connection to California except for the one time purchase from an insurer with a California office of a commercial liability policy for a construction project in Hawaii.

Accordingly, the Court finds that Navigators has not met its burden to show that defendants have purposefully availed themselves of the privilege of conducting business in California, and therefore there is no personal jurisdiction over defendants. Under these circumstances, the Court need not address the second and third steps of the specific jurisdiction test.

**II. Transfer**

Once a Court determines that it lacks personal jurisdiction it may dismiss the case or, in the interest of justice, transfer the case "to any district or division in which it could have been brought." 28 U.S.C. § 1406(a); *see also Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 466-67 (1962)

13

("The language of [28 U.S.C.] § 1406(a) is amply broad enough to authorize the transfer of cases . . . whether the court in which it was filed had personal jurisdiction over the defendants or not."); *see also Reed v. Brown*, 623 F. Supp. 342, 346 (D. Nev. 1985) (courts may transfer under § 1404(a) even where personal jurisdiction is lacking); *Kawamoto v. CB Richard Ellis, Inc.*, 225 F. Supp. 2d 1209, 1211 (D. Haw. 2002).

Defendants have requested, as an alternative to dismissal, that this case be transferred to the District of Hawaii. The Court finds that transfer is appropriate and in the interest of judicial efficiency. Transferring the case will obviate the need for Navigators to pay a second set of filing fees. Although Navigators wishes to proceed in this district, Navigators does not dispute that it could have filed this case in Hawaii.

## CONCLUSION

For the foregoing reasons and for good cause shown, the Court hereby GRANTS defendants' motions to dismiss for lack of personal jurisdiction and TRANSFERS the action to the District of Hawaii. 28 U.S.C. § 1631. This resolves Docket Nos. 12, 18, & 26.

**IT IS SO ORDERED**.

Dated: March 22, 2018

SUSAN ILLSTON
United States District Judge